### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BURLINGTON STORES, INC. | : | Hon. Joseph H. Rodriguez |
| | : | |
| *Plaintiff*, | : | |
| | : | Civil No. 21-12983 |
| v. | : | |
| | : | |
| ZURICH AMERICAN INSURANCE | : | **OPINION** |
| COMPANY, | : | |
| | : | |
| *Defendant*. | : | |

Plaintiff Burlington Stores, Inc. ("Burlington") filed this action under New Jersey's Declaratory Judgment Act, seeking a ruling that its insurer, Zurich American Insurance Company ("Zurich") must cover business losses sustained due to the COVID-19 pandemic. After Zurich removed the case from state to federal court, Burlington filed the present motion, asking the Court to abstain from exercising jurisdiction and remand the case to state court. The Court finds no reason to abstain from hearing this case and will deny Burlington's motion.

### I.   Introduction

Burlington is Delaware corporation operating principally in New Jersey that owns and operates more than 780 clothing retail stores in forty-five states and Puerto Rico. [Dkt. 1 Exh. C, Compl. ¶¶ 2, 15]. Zurich is an insurance company organized in New York with a principal place of business in Illinois. [Compl. ¶ 16]. Burlington purchased "All Risks" commercial property insurance policies from Zurich. [Compl. ¶ 4]. The Court will refer to these policies collectively as the "Policy." The Policy provides coverage for "loss or damage" to "Covered Property," [Compl. ¶¶ 32–34], which includes Burlington's interests in real and personal property. [Compl. ¶ 36]. The Policy also applies to "time element losses" that result from suspension of business

1

activities.  [Compl. ¶ 37].  The Policy further contains, a "Contamination Exclusion" that precludes coverage for losses sustained because of "[a]ny condition of property due to the actual presence of any foreign substance, impurity … virus…."  [Compl. ¶¶ 45–48].  Burlington maintains that endorsements to the Policy modified the Contamination Exclusion such that it no longer excludes losses suffered due to viruses.  [Comp. ¶¶ 51–54].

In March 2020 the SARS-CoV2 virus and the disease it causes, Coronavirus Disease 2019 ("COVID-19"), spread and caused a global pandemic.  [Compl. ¶ 5].  As a result, local governments and "[v]irtually every U.S. state where there was a Burlington store issued orders suspending or severely limiting business operations deemed to be 'non-essential businesses' where people could potentially contract COVID-19."  [Compl. ¶ 10].  To comply with government orders and to limit the spread of COVID-19, Burlington began closing its stores, distribution centers, and corporate offices nationwide on or around March 22, 2020.  [Compl. ¶ 8].  Burlington began to reopen its stores on May 11, 2020 but with reduced hours and with new added costs, such as providing personal protective equipment to staff and upgrading ventilation systems.  [Compl. ¶¶ 109–110].  Burlington alleges that it has suffered more than $750 million in losses and costs due to COVID-19 and related business interruptions.  [Compl. ¶¶ 12, 111–114].

Burlington submitted a claim to Zurich under the Policy to recover for these COVID-19 related losses.  [Compl. ¶¶ 115–117].  After Zurich did not respond to or investigate Burlington's claim, Burlington filed this lawsuit.  [Compl. ¶¶ 118–20].  Burlington seeks a declaration under the New Jersey Declaratory Judgment Act ("NJDJA"), N.J. Stat. Ann. § 2A:16-50 et seq. that the physical presence of COVID-19 in its stores and facilities constitutes physical damage to Covered Property as defined in the Policy and, therefore, that the Policy covers the COVID-related losses that Burlington suffered.  [*E.g.* Compl. ¶¶ 78, 111, 121–24].

Burlington filed its suit in the Superior Court of New Jersey, Burlington County. [*See* Compl.]. Zurich timely removed the case to this court on the basis of diversity jurisdiction. [*See* Dkt. 1]. Burlington filed the present motion to remand this case back to state court. [Dkt. 10]. Zurich opposed the motion, [Dkt. 12], and both parties submitted supplemental authority. [Dkt. 28-30, 32].

## II.    Jurisdiction

The Court has subject matter jurisdiction over this case based on diversity of citizenship under 28 U.S.C. § 1332.

## III.    Legal Standard

Under 28 U.S.C. § 1441(a), defendants may remove a case from state court to federal court if the federal court would have had original jurisdiction over the case. "As a 'general rule,' the federal court must then exercise jurisdiction over the case if jurisdiction is proper." *Phila. Eagles Ltd. P'ship v. Factory Mut. Ins. Co.*, No. CV 21-1776, 2022 WL 874952, at *1 (E.D. Pa. Mar. 24, 2022) (quoting *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014)). A plaintiff may challenge the propriety of the removal and seek remand to state court under 28 U.S.C. § 1447(c).

While federal district courts have a "virtually unflagging obligation … to exercise the jurisdiction" that Congress conferred upon them, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, creates an exception to this rule.[1] The DJA states that courts "**may** declare the rights and other

---

[1] The DJA applies in this case even though Burlington only seeks relief under the NJDJA. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "[T]he operation of the Declaratory Judgment Act is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937); *Muhlbaier v.*

legal relations of any interested party seeking such declaration." *Id.* § 2201(a) (emphasis added).

Courts have interpreted the term "may" to mean that the DJA "confers discretionary, rather than

compulsory, jurisdiction upon federal courts." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134–

35 (3d Cir. 2014) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942) and *Colo.*

*River Water Conservation Dist.*, 424 U.S. at 821).

In *Reifer v. Westport Insurance*, the Third Circuit provided guidance for district courts

deciding whether to retain or abstain from jurisdiction over DJA claims. "Courts should first

determine whether there is a 'parallel state proceeding.'" *Kelly v. Maxum Specialty Ins. Grp.*,

868 F.3d 274, 282 (3d Cir. 2017) (quoting *Reifer*, 751 F.3d at 143, 146). While not dispositive,

this factor warrants "increased emphasis." *Id.* (citations omitted); *see also Reifer*, 751 F.3d at

144 ("[T]he absence of pending parallel state proceedings militates significantly in favor of

exercising jurisdiction, although it alone does not require such an exercise."). Courts then weigh

the result of this first factor against the following eight additional factors to the extent they are

relevant:

1.  the likelihood that a federal court declaration will resolve the uncertainty of
    obligation which gave rise to the controversy;

2.  the convenience of the parties;

3.  the public interest in settlement of the uncertainty of obligation;

4.  the availability and relative convenience of other remedies;

---

*Specialized Loan Servicing LLC*, No. 118CV00125RBKJS, 2018 WL 3238832, at *2 (D.N.J. July 3, 2018). Thus, "when a declaratory judgment action has been removed to federal court, it is treated as though it had been filed under the federal declaratory judgment act." *BCB Bancorp, Inc. v. Progressive Cas. Ins. Co.*, No. 2:13–1261 CCC JAD, 2013 WL 8559731, at *3 (D.N.J. Oct. 8, 2013) (citation omitted); *see also Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 352 (3d Cir. 1986) ("It is settled law that, as a procedural remedy, the federal rules respecting declaratory judgment actions, apply in diversity cases."); *Muhlbaier*, No. 2018 WL 3238832, at *2 (applying the DJA to a claim alleged under NJDJA).

5.   a general policy of restraint when the same issues are pending in a state court;

6.   avoidance of duplicative litigation;

7.   prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

8.   (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Owen v. Hartford Ins. Co.*, No. CIV. 14-924 RBK/JS, 2014 WL 2737842, at *4 (D.N.J. June 17, 2014) (quoting *Reifer*, 751 F.3d at 144–46).  Before declining jurisdiction, district courts "should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors."  *Reifer*, 751 F.3d at 144.

## IV.   Analysis

Burlington argues that the *Reifer* factors require this Court to abstain from exercising jurisdiction and remand the case to New Jersey state court.  [Dkt. 10-1 at 6].  Zurich argues that the Court should not abstain because this case is a breach of contract action "masquerading" as a DJA action and is therefore ineligible for abstention under *Reifer*.  [Dkt. 12 at 8–10].  Even if *Reifer* applies, Zurich contends that the *Reifer* factors do not favor remand.  [Dkt. 12 at 10–11].  Assuming without deciding that Burlington raises a DJA claim and not a contract claim, the Court finds that the *Reifer* factors do not warrant abstention and remand.

The Court must presume that abstention is unwarranted.  Burlington concedes that there is no parallel state-court litigation between the parties related to claims at issue here.  [Dkt. 10-1 at 10].  This lack of state proceeding "militates significantly in favor of exercising jurisdiction."  *Reifer*, 751 F.3d at 144.  The Court will therefore determine whether the eight *Reifer* factors overcome this presumption in favor of retaining jurisdiction.

The parties agree that factors 2 (convenience of the parties), 4 (availability of other remedies), 6 (duplicative litigation), 7 (procedural "fencing"), and 8 (conflict of interest) are neutral.  Thus, the parties only argue over factors 1, 3, and 5.  The Court will limit its analysis accordingly.

The parties primarily dispute a factor 3, which concerns public interests.  The Third Circuit has recognized that "[i]n declaratory judgment actions Congress has afforded the federal courts a freedom not present in ordinary diversity suits to consider the state interest in having the state courts determine questions of state law."  *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000), *as amended* (Jan. 30, 2001) (quoting *Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir. 1992)).  As such, "where the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions."  *Id.*  District courts must "squarely address the alleged novelty of … state law claims" to determine whether the claims are novel or uncertain.  *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 10, 208 (3d Cir. 2021) (quoting *Reifer*, 751 F.3d at 148–49).

Burlington argues that New Jersey state courts have an interest in deciding the primary legal issue in this case, namely, "determining the scope and extent of insurance coverage owed to New Jersey residents for losses relating to the COVID-19 pandemic."  [Dkt. 10-1 at 16].  Burlington argues that this issue "raises novel questions of state law and important public policy concerns … such as whether the loss sustained by Burlington constitutes a 'Covered Cause of Loss' under the [Policy], whether Burlington suffered 'direct physical loss of' its property, and whether the Contamination Exclusion precludes coverage."  [Dkt. 10-1 at 18 (record citations omitted)].  Zurich responds that these allegedly "novel" questions are straightforward insurance

contract interpretation questions that multiple state and federal courts have considered since the beginning of the COVID-19 pandemic.  [Dkt. 12 at 13–20].

The Court agrees with Zurich.  While the COVID-19 pandemic is an unprecedented phenomenon, determining whether the Policy covers Burlington's COVID-19 business disruption losses and whether the Policy's Contamination Exclusion bars recovery will require the Court to consider "principles of New Jersey insurance law [that] are easily summarized and are likely familiar in every state."  *DiAnoia's Eatery*, 10 F.4th at 209.  *See also Inspira Health Network v. Am. Guarantee & Liab. Ins. Co.*, No. 1:21-CV-11124, 2022 WL 833569, at *5 (D.N.J. Mar. 21, 2022) ("While the interpretation of the [communicable disease] Term in Plaintiff's Policy certainly implicates important issues of public policy in New Jersey and no New Jersey court may have yet addressed this *precise* issue, this Court remains well-equipped to answer questions of contract interpretation.") (emphasis in original).  Thus, the legal issues presented here are not so "novel" that the Court should abstain from exercising jurisdiction.  *See id.*; *Tumi, Inc. v. Factory Mut. Ins. Co.*, No. CV2102752KMJBC, 2021 WL 4170051, at *3 (D.N.J. Sept. 14, 2021).

Moreover, case law in this area has developed since the COVID-19 pandemic began.  Early on, some federal courts were reluctant to retain jurisdiction rule on COVID-related business disruption insurance claims.  *E.g. Mark Daniel Hosp., LLC v. AmGUARD Ins. Co.*, 495 F. Supp. 3d 328, 336–37 (D.N.J. 2020), v*acated and remanded sub nom. DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, No. 20-2954, 2021 WL 3642111 (3d Cir. Aug. 18, 2021); *Grand Cru, LLC v. Liberty Mut. Ins. Co.*, No. CV 20-6878, 2020 WL 6938359, at *5–*6 (D.N.J. Nov. 25, 2020).  But since that time, New Jersey state and federal courts have provided "important guidance" concerning the application of New Jersey law to insurance claims grounded in

COVID disruptions. *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, No. CV208393FLWDEA, 2021 WL 486917, at \*4–\*5, n.1 (D.N.J. Feb. 10, 2021) (collecting cases); *see also Del. Valley Plumbing Supply, Inc. v. Merchants Mut. Ins. Co.*, 519 F. Supp. 3d 178, 182 (D.N.J. 2021) ("While at the time the parties briefed this motion there was limited caselaw addressing the impact of the COVID-19 pandemic on insurance policies, that is no longer the case."); *Mattdogg, Inc. v. Phila. Indem. Ins. Co.*, No. L-820-20, 2020 WL 7702634, at \*4 (N.J. Super. Ct. L. Div. Nov. 17, 2020) (ruling on COVID business disruption issues); *Mac Property Group LLC v. Selective Fire and Cas. Ins. Co.*, No. L-2629-20, 2020 WL 7422374, at \*8–\*9 (N.J. Super. Ct. Nov. 5, 2020) (same). These cases considered the same legal issues here, namely, whether COVID-19 business interruptions constitute physical losses or damage or are otherwise compensable under insurance contracts, and whether virus exclusions analogous to the Contamination Exclusion bar coverage. *See Causeway Auto*, 2021 WL 486917, at \*4–\*6; *T & L Catering, Inc. v. Hanover Ins. Grp., Inc.*, No. 320CV07934FLWZNQ, 2021 WL 2948425, at \*4 (D.N.J. July 14, 2021); *Benamax Ice, LLC v. Merch. Mut. Ins. Co.*, 529 F. Supp. 3d 350, 356–59 (D.N.J. 2021) (Rodriguez, J.); *Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, No. CV208676FLWDEA, 2021 WL 1040490, at \*4–\*8 (D.N.J. Mar. 18, 2021); *Stern & Eisenberg, P.C. v. Sentinel Ins. Co., Ltd.*, 534 F. Supp. 3d 357, 361–63 (D.N.J. 2021); *OTG Mgmt. PHL LLC v. Emps. Ins. Co. of Wausau*, 557 F. Supp. 3d 556, 565–70 (D.N.J. 2021) (applying New York law); *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 78 (D.N.J. 2020); *Mattdogg*, 2020 WL 7702634, at \*4. Thus, even if the issues presented in this case were "novel" in 2020, that is no longer the case.

As more New Jersey state and federal courts have considered insurance coverage for COVID-related business interruptions, federal courts have declined to abstain from hearing these

cases.  *See Count Basie Theatre, Inc. v. Zurich Am. Ins. Co.*, No. 221CV00615BRMLDW, 2021 WL 3732903, at *12 (D.N.J. Aug. 24, 2021) (finding that *Reifer* factors did not favor remand for COVID insurance coverage suit and, with respect to factor three, that previous cases finding abstention did not "reflect the current case law regarding the insurance coverage issues in the wake of the COVID-19 pandemic."); *Inspira Health Network*, 2022 WL 833569, at *5; *Tumi*, 2021 WL 4170051, at *3–*5; *see also Phila. Indem. Ins. Co. v. Yap*, No. 3:21-CV-1236, 2022 WL 1546631, at *6–*8 (M.D. Pa. May 16, 2022) (finding that *Reifer* factors did not favor abstention); *Phila. Eagles Ltd. P'ship v. Factory Mut. Ins. Co.*, No. CV 21-1776, 2022 WL 874952, at *6 (E.D. Pa. Mar. 24, 2022).

Considering this legal landscape, the Court finds that the issues in this case are neither "uncertain" nor "undetermined."  *Summy*, 234 F.3d at 135.  Rather they are contract interpretation issues which courts in this district have considered repeatedly since the COVID-19 pandemic began.  Factor 3 therefore does not favor abstention.

The Court turns next to factor 1, which concerns whether this Court's exercise of jurisdiction will resolve the legal uncertainty giving rise to this dispute and "thereby avoid duplicative, piecemeal litigation."  *DiAnoia's Eatery*, 10 F.4th at 205 (quoting Note, *Developments in the Law: Declaratory Judgments*—1941–1949, 62 Harv. L. Rev. 787, 805–17 (1949)).

> There are two general types of situations which may make it unlikely that a declaration will prevent further litigation: (1) when one or more persons have not been joined, but have an interest in the outcome of the action, and (2) when one or more issues have not been raised, but are a part of the controversy or uncertainty.

*Id.* at 205–06.

9

Here, "the declaratory judgment actions would bring about a complete termination of the parties' disputes without piecemeal litigation." *Id.* at 206. Burlington appears to admit as much because it alleges in its complaint that a "declaration of the parties' rights and obligations under the [Policy] will serve to resolve the dispute between them." [Compl. ¶ 124]; *see also DiAnoia's Eatery*, 10 F.4th at 206. Further Burlington does not argue that outstanding parties have not been joined or that other issues have not been raised. Thus, neither of the "general types of situations" that may lead to piecemeal litigation are present.

Burlington argues that this Court cannot resolve legal uncertainty underlying the COVID-19 business interruption claims here because "New Jersey appellate courts 'have not yet articulated the contours of COVID-19 related insurance coverage.'" [Dkt. 10-1 at 15 (quoting *Jul-Bur Assocs., Inc. v. Selective Ins. Co. of Am.*, No. CV 20-1977, 2021 WL 515484, at *3 (E.D. Pa. Feb. 11, 2021))]. Burlington claims that it would be improper for the Court to attempt to define those contours here because "cases presenting identical issues are already winding their way through [New Jersey] state courts." [Dkt. 10-1 at 15 (alterations in original, citations and quotations omitted)].

The Court rejects this argument. As the Third Circuit observed, following Burlington's argument "would place a thumb on the scale in favor of abstention in the many diversity jurisdiction cases raising issues which have not been resolved by the relevant state's highest court." *DiAnoia's Eatery*, 10 F.4th at 206. And, as discussed above, there is ample guidance from New Jersey state and federal courts to guide the Court's judgment. Moreover, "[t]he mere fact that no state court has specifically ruled on the issue before this Court does not mean that the state law is so unsettled that this Court should abstain from deciding this case," which only requires the Court to interpret the Policy using routine insurance contract interpretation rules.

*Count Basie Theatre*, 2021 WL 3732903, at *6 (quoting *BCB Bancorp. v. Progressive Cas. Ins. Co.*, Civ. A. No. 13-1261, 2014 WL 2434193 at *8 (D.N.J. May 28, 2014)).  Factor 1 therefore does not favor abstention and remand.

Finally, the Court considers factor 5, which concerns a "general policy of restraint when the same issues are pending in a state court." *Reifer*, 751 F.3d at 146.  This factor "is applicable only when the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding." *DiAnoia's Eatery*, 10 F.4th at 206 (citation omitted).

Burlington argues that this factor favors remand because "a significant number of cases related to insurance coverage for business interruption losses based on COVID-19 closures are pending in New Jersey state courts." [Dkt. 10-1 at 18].  Burlington points out that while New Jersey state trial courts have ruled on COVID-19 business interruption issues, "there are no state appellate rulings to date, and many of those trial court decisions … address specific virus exclusions that are not involved in this case." [Dkt. 10-1 at 19 n.7].

Burlington's argument misses the mark.  Burlington's position focuses on state-court litigation between other parties, when this factor would only favor remand if Burlington and Zurich were engaged in pending litigation in state court concerning the same issues presented in this case. *DiAnoia's Eatery*, 10 F.4th at 206.  Burlington does not argue that any such state litigation exists.  This factor therefore does not favor remand.

In sum, because the parties are not engaged in parallel state-court litigation, and because the only three relevant *Reifer* factors do not favor abstention, the Court declines to abstain from this case and remand the case to a New Jersey state court.

**V.    Conclusion**

For the reasons set forth above, the Court will deny Burlington's motion to remand this case to state court.  An appropriate order will follow.


June 28, 2022                                                    /s/ Joseph H. Rodriguez

                                                       Hon. Joseph H. Rodriguez, USDJ