UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BURLINGTON STORES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, <br><br> Defendant. | HONORABLE KAREN M. WILLIAMS <br><br> Civil Action <br> No. 1:21-cv-12983-KMW-AMD <br><br> **OPINION** |

**John Gregory Koch, Esq.**
FLASTER GREENBERG P.C.
1717 Arch Street
Suite 3300
Philadelphia, PA 19103

*Counsel for Plaintiff Burlington Stores, Inc.*

**Susan M. Kennedy, Esq.**
WIGGIN AND DANA LLP
Two Liberty Place
50 S. 16th Street
Philadelphia, PA 19102

*Counsel for Defendant Zurich American Insurance Company*

**WILLIAMS, District Court Judge:**

I. **INTRODUCTION**

This matter comes before the Court by way of the Motion of defendant Zurich American Insurance Company ("Zurich") to dismiss the Complaint of plaintiff Burlington Stores, Inc. ("Burlington") pursuant to Federal Rule of Civil Procedure 12(b)(6). Burlington opposes Zurich's Motion. The parties submitted supplemental briefing in this case in response to both: (a) the March 1, 2023 Order to Show Cause (ECF No. 40) issued by the Honorable Joseph H. Rodriguez, Senior United States District Judge; and (b) the January 24, 2024 decision of the Supreme Court of New Jersey in *AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co.*, 256 N.J. 294 (2024). After all

1

briefing had concluded, this matter was reassigned for administrative purposes. (ECF No. 51.) For the reasons set forth below, the Court grants Zurich's motion to dismiss pursuant to Rule 12(b)(6) ("Motion").

## II. BACKGROUND

In this case, Burlington's Complaint seeks a declaratory judgment requiring its insurer, Zurich, to provide insurance coverage for business losses Burlington sustained during the global pandemic in 2020. (ECF No. 1, Exhibit A, Compl.) Burlington alleges that it is a "nationally recognized off-price retailer" that owns and operates more than 780 retail stores in 45 states and Puerto Rico, selling apparel for men, women, and children, as well as beauty merchandise, footwear, accessories, home goods, and toys. *See* Compl. ¶ 2. As alleged in the Complaint, the World Health Organization declared a global pandemic arising from the spread of the SARS-CoV2 virus and the disease it causes, Coronavirus Disease 2019 ("COVID-19") on March 11, 2020. *See id.* ¶¶ 4-5.

Burlington asserts that in response to the pandemic "[v]irtually every" state where it owns and operates stores "issued orders suspending or severely limiting business operations deemed to be 'non-essential businesses' where people could potentially contract COVID-19 from others or from the property itself." *See id.* ¶ 10. By March 22, 2020, Burlington alleges that it had "closed all of its stores, distribution centers . . ., and corporate offices" in order "[t]o combat the rapid spread of COVID-19 and to protect its customers, associates, and property[.]" *See id.* ¶ 8. Although Burlington began to reopen various locations on May 11, 2020, it contends that the "suspension of [its] business activities, consistent with the governmental mandates, precluded access to Burlington's stores" and resulted in "considerable business interruption and other losses and costs" in excess of $750 million. *See id.* ¶¶ 11-12, 109, 114.

2

Burlington contends that these losses resulted from physical loss of or damage to its insured property as follows. Specifically, Burlington alleges that small droplets from the nose or mouth of a person infected with COVID-19 are expelled when that person coughs, sneezes, or speaks, and those droplets can land on objects or surfaces such as tables, doorknobs, or handrails. *See id.* ¶ 76. Moreover, Burlington notes that touching these objects or surfaces and then touching one's eyes, nose, or mouth, can lead a person to become infected with COVID-19. *Id.* Burlington further explains that the physical objects or surfaces which "carry and are capable of transmitting infections agents" like COVID-19 are known as fomites. *Id.* ¶ 80. Thus, Burlington alleges, fomites are objects that have been altered by COVID-19 and thus transformed into "vectors of disease." *Id.*; *see also* ¶ 108 (alleging that "depositing infectious Coronavirus droplets on . . . surfaces, physically alter[s] and transform[s] those surfaces into disease-transmitting fomites.").

Burlington asserts that the "presence of the Coronavirus in and on property, including indoor air, surfaces, and objects, causes direct physical loss of or damage to property by altering property [i.e., creating fomites] and rendering it incapable of being used for its intended purposes, untenantable, and uninhabitable." *Id.* ¶¶ 78, 81; *see also* ¶ 87 ("The presence of Coronavirus in and on property, including indoor air, surfaces, and objects, renders the property lost, unsafe and unfit for its normal usage and otherwise untenantable and uninhabitable."). Accordingly, Burlington alleges that its "losses resulted from 'loss of or damage' to either Covered Property, or to Property of the type insurable under the . . . Policies, when the Coronavirus and COVID-19 caused a loss of or a deprivation of insured property and otherwise impaired the functionality of such property." *Id.* ¶ 32.

Following the suspension of its business activities and the losses it incurred, Burlington presented Zurich with a First Notice of Loss on December 28, 2020, to recoup these losses under

3

two "'All Risks' First Party Property and Time Element" commercial property insurance policies ("Policies")[1] it purchased from Zurich that were in effect in 2019, 2020, and 2021. *See id.* ¶¶ 20, 115. Although Zurich acknowledged receipt of the First Notice of Loss and assigned Claim Number: 5630061488, Burlington asserts that Zurich failed to respond to the estimated claim for insurance Burlington subsequently submitted on March 31, 2021 and has not conducted any investigation into Burlington's claim since that time. *See id* ¶¶116-120. Burlington alleges that Zurich ultimately "failed to honor its promise to insure Burlington" under the Policies "for the losses and costs that" it sustained during the pandemic. *See id.* ¶ 13.

### III. PROCEDURAL HISTORY

#### A. <u>Removal and Request for Remand</u>

Burlington filed the Complaint in this action on May 18, 2021, in the Superior Court of New Jersey, Law Division, Burlington County, under New Jersey's Declaratory Judgment Act ("DJA"), N.J. Stat. Ann. § 2A:16-50 *et seq*. Zurich timely removed the action to federal court based on diversity of citizenship jurisdiction, and Burlington subsequently moved to remand the case to state court, requesting that Judge Rodriguez abstain from exercising jurisdiction. (ECF No. 10.) Judge Rodriguez denied Burlington's motion to remand by Opinion and Order dated June 28, 2022. *See Burlington Stores, Inc. v. Zurich Am. Ins. Co.*, No. 21-12983, 2022 WL 2341419, at *1 (D.N.J. June 28, 2022).

---

[1] Zurich sold Burlington two "All Risk" First Party Property and Time Element insurance policies: Policy Number XPP0239022-01, effective from April 1, 2019 to April 1, 2020 and Policy Number XPP0239022-02, effective from April 1, 2020 to April 1, 2021. Compl. ¶ 20. As Zurich notes in the Motion, the terms of these two Zurich Edge policies are identical. (ECF No. 35-1 at 11.) Therefore, the Court will refer to these two policies collectively as the "Policies" without regard to their effective dates since the dates of Burlington's alleged losses overlap the effective dates of the two policies, i.e., Policy Number XPP0239022-01 would theoretically be applicable for losses sustained from the onset of the pandemic in March of 2020, while Policy Number XPP0239022-02 would theoretically be applicable for losses sustained on or about April 1, 2020, after the expiration of Policy Number XPP0239022-01.

4

### B.     Motion to Dismiss, Order To Show Cause, and Stay

Shortly after Judge Rodriguez denied the request to remand this matter, Zurich moved to dismiss the Complaint for failure to state a claim. (ECF No. 35.) However, after briefing on Zurich's Motion concluded, however, the United States Court of Appeals for the Third Circuit issued a precedential decision in *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131 (3d Cir. 2023), an insurance case regarding the scope of coverage for losses sustained during the pandemic by various businesses. Judge Rodriguez entered an Order to Show Cause on March 1, 2023 regarding the *Wilson* decision. (ECF No. 40.) Judge Rodriguez recognized that the insurance coverage provisions at issue in *Wilson* were substantially similar to the provisions at issue in Burlington's Policies, suggesting that the Third Circuit's holding[2] in *Wilson* was applicable in this matter, and that the coverage Burlington sought was unavailable as a matter of law. *See id.* at 1-2. Accordingly, Judge Rodriguez directed Burlington to show cause why this matter should not be dismissed pursuant to the binding precedent set forth by the Third Circuit in *Wilson*. *See id.* at 2. Both Burlington and Zurich filed responses for the Court's consideration. (*See* ECF Nos. 42, 44.)

In response, Burlington requested that Judge Rodriguez stay this matter "pending the resolution of pertinent state law issues currently before the New Jersey Supreme Court[.]" (ECF No. 42 at 2, 10). Burlington argued that, unlike in *Wilson*, where the Third Circuit predicted how the New Jersey Supreme Court would resolve issues of state law, the New Jersey Supreme Court was set to rule on "three critical questions of state insurance law"[3] in a then pending case captioned

---

[2] In *Wilson* the Third Circuit held that the inability of an insured business to use its property for its intended purpose caused by government shut-down orders issued in response to COVID-19, and untethered to the physical condition of the premises, did not constitute "a physical loss or damage" to the property within the meaning of its insurance policy, precluding coverage for business losses. 57 F.4th at 142-43.

[3] Burlington identified those three questions of state insurance law as follows:

    1. Does *Printing Mart[-Morristown v. Sharp Electronics*, 116 N.J. 739 (1989)] permit New Jersey courts to adjudicate factual disputes at the pleading stage --

5

*AC Ocean Walk, LLC v. Am. Guar. & Liab. Ins. Co.*, Supreme Court of New Jersey, Docket No. 087304. *See id.* at 10. Burlington urged Judge Rodriguez to "await the New Jersey Supreme Court's pronouncement of state law" in *AC Ocean Walk*, rather than to rule on Zurich's Motion and dismiss the Complaint at that time. *See id.* Zurich opposed Burlington's request to stay this matter pending a decision by the New Jersey Supreme Court in *AC Ocean Walk*. (ECF No. 44 at 7.) Ultimately, however, Judge Rodriguez concluded that a stay was warranted given that "the legal significance of the operative phrase 'physical loss or damage' [would] be determined by the New Jersey Supreme Court in *AC Ocean Walk*[.]" (ECF No. 45 at 2.) Accordingly, by Order dated March 28, 2023, this matter was stayed pending the decision in *AC Ocean Walk*. *See id.*

### C. Supplemental Briefing After the Decision AC Ocean Walk

On January 24, 2024, the New Jersey Supreme Court issued its decision in *AC Ocean Walk*. *See generally AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co.*, 256 N.J. 294, 307 A.3d 1174 (2024). Thereafter, the parties filed a joint letter asking for the opportunity to submit supplemental briefing on the applicability of *AC Ocean Walk* in this case. (ECF No. 47 at 1.) By Order dated March 21, 2024, Judge Rodriguez lifted the stay and granted the parties' joint request

---

such as determining that the Coronavirus cannot physically alter a property's airspace or surfaces, that the virus is easily wiped away, and that the virus's threatened or actual presence cannot render property unusable -- contrary to the allegations in a plaintiff's complaint?
2. Are allegations that insured property was physically damaged by the presence of the Coronavirus or rendered essentially unusable by the risk of the Coronavirus sufficient to allege "[d]irect physical loss of or damage" to covered property?
3. Does New Jersey law prohibit an insurer from restricting coverage for pandemic-related losses by including a reference to "virus" in a general pollution exclusion?

(ECF No. 42 at 10) (citing *AC Ocean Walk, LLC v. Am. Guar. & Liab. Ins. Co.*, Supreme Court of New Jersey, Docket No. 087304, Pet. for Certification, at 7).

6

to file supplemental briefs. (ECF No. 48.) Burlington and Zurich filed their supplemental briefs on April 15, 2024. (ECF Nos. 49, 50.)

## IV. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557).

Additionally, in ruling on a motion made pursuant to Rule 12(b)(6), a district court may consider "only the complaint, exhibits attached to the complaint, [and] matters of public record, as

7

well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citing *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Generally, a district court cannot consider matters that are extraneous to the pleadings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, the court may consider documents integral to, or explicitly relied upon, in the complaint without converting the motion to dismiss to one for summary judgment. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426).

## V. DISCUSSION

### A. Interpretation of Insurance Contracts Under New Jersey Law

Under New Jersey law,[4] making the determination regarding proper coverage under an insurance contract is a question of law. *See Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Atlantic Mut. Ins. Co. v. Palisades Safety and Ins. Ass'n*, 364 N.J. Super. 599, 604, 837 A.2d 1096, 1098 (2003)). As the New Jersey Supreme Court has explained, "[a]n insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 202 N.J. 432, 441, 997 A.2d 991, 996 (2010); *see also Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 226 N.J. 403, 415, 143 A.3d 273, 280 (2016) ("It follows that '[i]n attempting to discern the meaning of a provision in an insurance contract, the plain language is ordinarily the most direct route,' . . . and that when 'the language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect[.]'") (internal citations omitted). Thus "[i]f

---

[4] As a threshold matter, the Court agrees with the parties that New Jersey law governs the determination of this insurance dispute. *See, e.g.*, Burlington's Mem. of Law in Supp. of Remand (ECF No. 10-1 at 1) ("This insurance coverage dispute is governed by New Jersey law and public policy."); Zurich's Motion (ECF No. 35-1 at 9).

8

the language is clear, that is the end of the inquiry[,]" and the "court should not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238, 948 A.2d 1285, 1289 (2008) (citation omitted).

However, "[i]f the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists." *Id*; *see also Lee v. Gen. Accident Ins. Co.*, 337 N.J. Super. 509, 513, 767 A.2d 985, 987 (2001) (recognizing that a genuine ambiguity "arise[s] where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage."). Moreover, "[w]hile specific words may not be ambiguous, the context in which they are used may create an ambiguity. The court's responsibility is to give effect to the whole policy, not just one part of it." *Cypress Point Condo*, 143 A.3d at 280. In circumstances where "the controlling language of a policy will support two meanings, one favorable to the insurer and the other to the insured, the interpretation favoring coverage should be applied[,]" and the "court may look to extrinsic evidence as an aid to interpretation." *Id.* (citations and internal quotations omitted); *see also Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 179 N.J. 87, 101, 843 A.2d 1094, 1103 (2004) ("When there is doubt, . . . regarding the existence of coverage, that doubt is ordinarily resolved in favor of the insured.") "Even so, when considering ambiguities and construing a policy, courts cannot 'write for the insured a better policy of insurance than the one purchased.'" *Flomerfelt*, 997 A.2d at 996 (citing *Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 N.J. 517, 529, 562 A.2d 208 (1989)).

B. **Direct Physical Loss Of or Damage To Property**

Zurich's primary argument is that Burlington's claim rises or falls on the meaning of the phrase "direct physical loss of or damage" to property as used in the Policies.[5] (ECF No. 35-1 at 8) ("All of the . . . policy provisions under which the Plaintiff seeks coverage require . . . that Plaintiff plausibly plead 'direct physical loss of or damage to' relevant property.") Zurich contends that Burlington's attempts at creative pleading cannot be used to manufacture coverage because the core of the Complaint actually "asserts losses due to the adverse economic effects of the [government] closure orders and the pandemic[.]" *See id.* at 19-20. According to Zurich, the Complaint "fails as a matter of law because [Burlington] has not and cannot plausibly plead that it suffered any actual 'direct physical loss of or damage' to any specific insured property[.]" *See id.* at 19. Zurich asserts that Burlington closed its stores as a result of government orders, which applied regardless of whether the virus was present, but that Burlington's "stores remained structurally unharmed and functional and were able to be reopened as soon as the [government] orders were lifted." *See id.* at 24-25.

"To state a successful claim for coverage under an insurance policy, an insured must first make a prima facie showing that its claim falls within the policy's grant of coverage."[6] *Wilson*, 57

---

[5] Zurich also contends that Burlington's claim for coverage can be dismissed on an independent basis. (ECF No. 35-1 at 11 n. 3.) Because the Policies at issue are excess coverage policies that only attached in excess of a lower $30,000,000 loss layer, Zurich argues that Burlington was required to plead that this underlying primary layer of coverage was exhausted. *Id.* The Court notes that Burlington did not specifically plead facts relating to the exhaustion of its primary layer of coverage in the Complaint, nor did it respond to Zurich's argument on this issue in opposing the Motion. Zurich is correct that under New Jersey law an excess policy is not triggered until the primary policy has been exhausted. *See Sanichar v. Lexington Ins. Co.*, No. BER-L-11512-04, 2005 WL 6424521 (N.J. Super. L. Aug. 17, 2005). However, for purposes of this Opinion, the Court need not make a determination on this issue given the finding that Burlington's claim fails because it did not suffer a direct physical loss of or damage to property as set forth *infra*.

[6] Burlington's initial opposition to Zurich's Motion argued that Zurich cited the wrong burden of proof with respect to coverage under all-risk insurance policies like the Policies at issue. (ECF No. 38 at 11-13.) Relying on *Victory Peach Grp., Inc. v. Greater New York Mut. Ins. Co.*, Burlington argues that "[u]nder the 'special' and broad coverage provided" by the all-risk Policies it purchased from Zurich, Burlington "need only show that it suffered a 'fortuitous' loss[,]" meaning a loss that is dependent on chance. 310 N.J. Super. 82, 87, 707 A.2d 1383, 1385 (App.

10

F.4th at 141 (citing *Hartford Accident & Indem. Co. v. Aetna Life & Cas. Ins. Co.*, 98 N.J. 18, 483 A.2d 402, 408 (1984)). The Insuring Agreement of the Policies states that the Policies "insure[] against direct physical loss of or damage caused by a **Covered Cause of Loss** to covered property, at an insured location[.]"[7] (ECF No. 35-1 at 11-12) (citing Exhibit A., Policy, § 1.01) (bold in original). The Policies define a "Covered Cause of Loss" as "[a]ll risks of direct physical loss of or damage from any cause unless excluded." *Id.* at 5 n. 4 (citing Policy, § 7.11). The Policies insure against Property Damage to Burlington's Covered Property including both real and personal property. Compl. ¶¶ 35-36. Additionally, the Time Element Loss provisions provide coverage for losses resulting from the necessary suspension of Burlington's business activities at an insured location, meaning the slowdown or cessation of such activities. *Id.* ¶¶ 35, 37-38. Finally, Burlington notes that the Policies also provide various Special Coverages. *Id.* ¶¶ 35, 40.

Zurich argues that there is no coverage under any of these additional provisions of the Policies without the requisite direct physical loss of or damage to insured property. (ECF No. 12-14). For example, Zurich explains that coverage under the Business Interruption provision requires that the "loss must result from the necessary Suspension of" Burlington's business activities "due

---

Div. 1998) (footnote omitted). *See id.* at 12 n.3; *see also id.* at 10 ("After Burlington satisfies its burden of showing that it suffered a fortuitous loss, the burden shifts to Zurich . . ."). However, in its subsequent filings (ECF Nos. 42, 49), Burlington appears to have abandoned its original argument and recognized that as the insured, Burlington bears the burden to demonstrate that its claim falls within the Policies' grant of coverage. *See, e.g.,* (ECF No. 42 at 2) ("Consistent with Wilson, Burlington pleads 'direct physical loss of or damage to property' establishing its right to insurance covered for losses stemming from the coronavirus pandemic."); (*id.* at 4) ("The following conclusions may be drawn from *Wilson*: 1. an insured business must allege that its operations were suspended because of 'direct physical loss of or damage to' [] covered property[.]"); (ECF No. 49 at 3) ("Burlington pleads the requisite 'direct physical loss of or damage' to property and does not merely allege that it was unable to use its property due to governmental orders."); (*id.* at 4) ("Burlington's Complaint directly tethers its losses to the physical condition of the relevant property" and "explicitly pleads facts explaining how the physical presence of coronavirus rendered property unsafe[.]")

[7] Although Burlington did not attach copies of the Policies to its Complaint, the Court can rely on the copy of the Policies Zurich attached to its Motion without converting it to one for summary judgment given that the Policies are both integral to, and explicitly relied upon, in Burlington's Compliant. *See Schmidt*, 770 F.3d at 249; *see also* Compl. ¶ 21 ("The terms and considers of the Zurich All Risks Policies are fully incorporated herein by reference.").

11

to direct physical loss of or damage to property[.]" *Id.* at 12 (citing Policy, §4.01.01). Additionally, as Zurich sets forth, the "Extra Expense" provisions of the Policies only provide coverage for expenses incurred to resume or continue business activities that were suspended "due to direct physical loss of or damage" to Covered Property. *Id.* (citing Policy, § 4.02.03); *see also id.* at 13-14 (citing Policy, §§ 5.02.03, 5.02.05, 5.02.07, 5.02.15, 5.02.24.01) (observing that all of these various provisions tie the existence of Burlington's coverage to a loss or expense incurred due to, or resulting from, direct physical loss or damage). Thus, Zurich argues that Burlington must plausibly plead the existence of direct physical loss of or damage to covered property in order to succeed on its claim for coverage. *Id.* at 18.

Although none of the words in the phrase "direct physical loss of or damage" are specifically defined by the Policies, the language of the Policies is not ambiguous. As the New Jersey Supreme Court recently recognized, the "dictionary definitions of [the] terms ["loss," "damage," "direct," and "physical"] shed light on the parties' intent when they agreed to that policy language." *AC Ocean Walk*, 307 A.3d at 1185. The New Jersey Supreme Court went on to define these terms as follows:

> (1) **Loss** – "the state or fact of being destroyed or placed beyond recovery: destruction, ruin," and "the act or fact of losing; failure to keep possession[;]"
> (2) **Damage** – "loss due to injury: injury or harm to person, property, or reputation," . . . and "loss or injury to person or property; esp. physical harm that is done to something or to part of someone's body[;]"
> (3) **Direct** – "stemming immediately from a source[,]" and
> (4) **Physical** – "[o]f, relating to, or involving material things; pertaining to real, tangible objects," . . . and "of or relating to natural or material things as opposed to things mental, moral, spiritual or imaginary: material, natural[.]"

*Id.* (citing Webster's Third New International Dictionary (Unabridged) (2002) and Black's Law Dictionary (11th ed. 2019)). Employing these dictionary definitions, the New Jersey Supreme

12

Court concluded that "the phrase 'direct physical loss of ... property' clearly denotes the destruction of the property or a physical change to the property that renders it unusable or uninhabitable[,]" while the "policy term 'direct physical . . . damage' to property denotes a 'distinct, demonstrable, and physical alteration of [the property's] structure' that render the property useless or uninhabitable." *Id.* at 314-315, 1185-1186.

Consistent with the Third Circuit's prediction of state law in *Wilson*, in *AC Ocean Walk*, the New Jersey Supreme Court went on to conclude that under the "plain terms of the policies" the insured is "required to demonstrate that its property was destroyed or altered in a manner that rendered it unusable or uninhabitable" in "order to show a 'direct physical loss' of its property or 'direct physical . . . damage' to its property[.]" 307 A.3d at 1187. As Zurich correctly points out, the decision in *AC Ocean Walk* conclusively resolved this coverage issue with respect to the "***exact same policy form issued to Burlington***" and "removed any doubt on how New Jersey law applies to these COVID-19 business interruption insurance coverage cases." (ECF No. 50 at 3) (emphasis added). The New Jersey Supreme Court explicitly determined that factual allegations regarding the "actual and/or threatened presence of Coronavirus particles on [the insured's] premises" are insufficient to satisfactorily plead "direct physical loss of or damage" to insured property under the terms of the policy. *AC Ocean Walk*, 307 A.3d at 1187-88 (finding that "[t]he facts pled by Ocean Walk fall short of that mark."). Moreover, the New Jersey Supreme Court highlighted that its holding that the insured's factual allegations did "not satisfy the policy language comports with the vast majority of decisions by federal and state appellate courts that have addressed the issue."[8] *Id.* at 1188 (collecting cases).

---

[8] Long before its decision in *AC Ocean Walk*, the New Jersey Supreme Court recognized that "[a]lthough courts frequently look to how other courts have interpreted the same or similar language in standardized contracts to determine what the parties intended," and "guide [their] analysis." *Chubb Custom Ins. Co.*, 948 A.2d at 1289-90.

To determine whether dismissal is appropriate in this case, the Court must examine Burlington's factual allegations within the context of the plain, unambiguous language of the Policies, as well as the overwhelming number of binding and persuasive decisions from the New Jersey Supreme Court, the New Jersey appellate courts, the Third Circuit, the courts within this District, other federal courts of appeals and district courts, and state supreme courts. Under this scrutiny, Burlington's allegations fail to sufficiently set forth that it suffered "direct physical loss of or damage" to property entitling it to coverage under the Policies. Burlington alleges that the "presence of the Coronavirus in and on property, including indoor air, surfaces, and objects, causes direct physical loss of or damage to property by altering property [i.e., creating fomites] and rendering it incapable of being used for its intended purposes, untenantable, and uninhabitable." *Id.* ¶¶ 78, 81. Burlington alleges that COVID-19 physically alters objects and surfaces and transforms them into "vectors of disease" and "disease-transmitting fomites." *Id.* ¶¶ 80, 108. Clearly, Burlington's allegations are simply an attempt to creatively plead around the requirement of direct physical loss or damage.

For example, applying this contention in practical terms, one might compare two doorhandles located in Burlington's stores. One of these doorhandles has had COVID-19 droplets deposited on it, while the second one has not. Under Burlington's allegations, the first doorhandle has been physical altered and transformed into a fundamentally different object based solely on the presence of COVID-19 on its surface. This contention not only strains credulity, it is simply not plausible. There is no fundamental physical change to the COVID-19 doorhandle. When compared to its non-COVID-19 counterpart, both doorhandles retain their shape, form, consistency, texture, color, size, and other defining characteristics, such as the material they are

14

made from.[9] The COVID-19 doorhandle has not been changed, altered, or transformed in a way that is "tangible, concrete and capable of being perceived through the senses as opposed to the mind" – the specific definition of the word "physical" as used in Burlington's Complaint. *See id.* ¶ 34. Although Burlington's allegations employ a clever use of semantics in order to avoid dismissal, at bottom, these allegations are no different than the allegations made by the insured in *AC Ocean Walk*. Burlington essentially claims that the actual or threatened presence of COVID-19 particles on its premises is sufficient to demonstrate direct physical loss or direct physical damage. However, such allegations are clearly insufficient to support Burlington's claim for coverage under the language of the Policies. *AC Ocean Walk*, 307 A.3d at 1187-88. Burlington's allegations are "completely divorced from the physical condition of the premise[.]" *See Wilson*, 57 F.4th at 142. Thus, it is not entitled to coverage under the Policies as a matter of law.[10]

## VI.   **CONCLUSION**

For all of the reasons articulated above, the Court grants Zurich's Motion and dismisses the Complaint with prejudice.

Dated: November 26, 2024

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

---

[9] The same is true with respect to other physical objects located in Burlington's stores and facilities, including but not limited to, desks, countertops, sales racks, doors, mirrors, and shelves.

[10] Given the Court's determination that Burlington did not allege facts sufficient to establish a direct physical loss of or direct physical damage to its property, it is not necessary for the Court to address Burlington's argument regarding the applicability of the contamination exclusion in the Policies. *Cf. AC Ocean Walk*, 307 A.3d at 1189.